UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff/Respondent,

                                    Criminal Case No. 07-CR-20546
vs.                                HON. GEORGE CARAM STEEH

JOSEPH COSTA PACHECO, III,

                Defendant/Petitioner
_____/

## ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [#108] AND DENYING CERTIFICATE OF APPEALABILITY

      Petitioner Joseph Costa Pacheco, III, was convicted of five counts of bank robbery and was sentenced to 120-months imprisonment.  Now before the court is Pacheco's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  The government filed a response brief opposing the motion as to all claims.  For the reasons set forth below, Pacheco's motion shall be denied.

## BACKGROUND

      Pacheco robbed five banks in Eastern Michigan during a two-week period  between October 15, 2007 and October 29, 2007.  In each robbery, his modus operandi was the same.  He arrived near closing time, waited in line, and then presented the teller with a note and a brown bag, instructing the teller "this is a robbery, put the money in the bag."  In none of the robberies did Pacheco brandish a weapon.  On October 30, 2007, Pacheco was arrested and admitted to police that he had robbed each of the five banks.  A grand jury returned an indictment charging Pacheco with five counts of bank robbery in violation of 18

U.S.C. § 2113(a). On October 31, 2007, the date that the criminal complaint was sworn, this court appointed Pacheco counsel from the Federal Defender's Office. (Doc. 2). On July 31, 2008, his first attorney was allowed to withdraw, and the court appointed new counsel on Pacheco's behalf. (Doc. 23).

On December 2, 2008, his second counsel was allowed to withdraw and Pacheco's motion to represent himself pro se was granted. (Doc. 36). Pacheco had a legal background, having worked previously as a paralegal doing civil work. During the hearing on Pacheco's motion to represent himself pro se, this court advised Pacheco of his constitutional right to be represented by counsel at every stage of the proceedings (Doc. 83 at 8), admonished him as to the severity of the charges against him and of a possible sentence of twenty years in prison as to any count of the indictment and a potential fine of $250,000, Id. at 9, cautioned him that he lacked familiarity with court procedures and the Federal Rules of Evidence, and repeatedly urged him not to represent himself. Id. at 12-13. This court further cautioned him, that even with standby counsel, he was ultimately responsible for his own representation, advising him, "[e]ven with standby counsel, to the extent that you're called upon to respond to issues as they come up, you're at a distinct disadvantage in fully responding to the issues if all you have done is consult with a lawyer, and you have to formulate the responses to the issues yourself." Id. at 6. This court appointed stand-by counsel on December 3, 2008. (Doc. 37). During the rest of the pretrial proceedings and at trial, Pacheco represented himself pro se with the assistance of standby counsel.

On January 7, 2009, Pacheco moved that the court authorize an expert to investigate, among other things, eighty-five potential witnesses identified from police

reports. (Doc. 46). This court denied the motion without prejudice on the grounds that Pacheco's standby counsel was authorized to conduct an investigation and should the need for further investigation become apparent, his standby counsel could so move. (Doc. 47). Pacheco's standby counsel moved on February 9, 2009 to obtain an investigator to interview witnesses. (Doc. 52). On March 13, 2009, this court granted the motion, appointed an investigator, granted a ninety-day trial continuance, and awarded $1,000 in court funds to pay for the investigation. (Doc. 54). On July 16, 2009, this court awarded Pacheco an additional $600 in court awarded funds for investigative services. (Doc. 58). Prior to trial, the government provided the work telephone numbers for each of the victim tellers as well as the phone numbers and addresses of the lay witnesses. (Doc.108, Ex. A at 2-3). When the witnesses refused to speak with the defense, the prosecutor supplied the defense with the victims' personal phone numbers. Id.

On September 14, 2009, Pacheco's jury trial began. That morning, Pacheco requested a thirty-day adjournment to allow his private investigator to contact an additional twenty witnesses, arguing that the government had delayed in providing his investigator with the home phone numbers of certain witnesses. He also sought the time extension to allow him to review police interrogation videos and surveillance videos of the robbery. This court denied the motion for an adjournment but discontinued the trial after voir dire, setting aside the time to allow Pacheco to view the video evidence. The next day the trial proceeded as scheduled. The government played video recordings of Pacheco robbing the banks and introduced surveillance photographs, on which Pacheco wrote, "this is me" following his arrest. The government also called each of the five victim tellers to testify. Each victim identified Pacheco in still photos or in videos of the robberies and they each

identified him in the courtroom. All five tellers testified that bank policy required that they comply with notes that demanded money and four testified that they handed over the cash because Pacheco demanded it, not because of bank policy.

At trial, Pacheco took the stand and admitted, as he had in an earlier post-arrest confession, that he robbed all five banks, but his defense was that none of the tellers felt threatened or intimidated in any way but merely gave him the money in accordance with bank policy regarding procedures during a robbery. Pacheco testified at trial as follows:

> Prosecutor: I would like to talk about some of the things that I think we agree on in this case. You're not disputing whatsoever that you are the person that walked in the - all the banks and passed a demand note to all the tellers?
>
> Defendant: Not at all.

(Doc. 88, Trial Transcript at 14).

Following a two-day trial, a jury convicted Pacheco on all five counts. On January 7, 2010, this court sentenced Pacheco to 120-months in prison, three years supervised release, and restitution in the amount of $16,732.06. (Doc. 76). Prior to sentencing, this court considered sentencing memoranda submitted by Pacheco and the government, a Pre-Sentence Investigation Report, multiple victim impact statements, and two letters submitted in support of Pacheco. The court rejected Pacheco's argument made in his sentencing memorandum and at the hearing itself, that he was entitled to a two-point downward departure for acceptance of responsibility, and also considered and rejected his claim that the criminal history category of VI overrepresented his past criminal conduct. This court determined that the guideline range was 120 to 150 months imprisonment, and sentenced Pacheco at the very lowest level of the guidelines.

Pacheco appealed his conviction and sentence. On appeal, Pacheco accepted appointed counsel, although he also attempted to make additional pro se filings, which the Sixth Circuit rejected. As to his conviction, Pacheco argued that this court erred in denying his request for additional investigative funds and his request for a thirty-day trial continuance to allow his investigator to interview additional witnesses. He also argued that the government failed to prove that the banks he robbed were FDIC-insured. As to his sentence, Pacheco argued that this court erred in not awarding him a two-level downward adjustment of his offense level for acceptance of responsibility and for allegedly failing to consider his argument that his criminal history was overrepresented. The Court of Appeals for the Sixth Circuit affirmed the conviction and sentence on March 16, 2012.

On February 14, 2013, Pacheco timely filed the 28 U.S.C. § 2255 petition now before the court. In his motion to vacate, set aside or correct judgment, Pacheco argues he is entitled to relief on the following grounds: (1) prosecutorial misconduct by allegedly impeding the efforts of his court appointed investigator, withholding exculpatory evidence, and failing to correct allegedly false witness testimony, (2) ineffective assistance of appellate counsel by failing to appeal the jury instruction given by the court regarding what "intimidation" means under the federal bank robbery statute, failing to object to the inclusion of points towards his criminal history based on prior felony convictions on October 20, 1993, entered without the assistance of counsel, misdemeanor convictions for domestic battery on June 6, 2000, and a trespassing conviction on February 21, 2001, and for failing to challenge the restitution amount; (3) due process violations of standby counsel for failing to subpoena defense witnesses, failing to turn over certain evidence, and failing to assist him, (4) denial of right to counsel because his waiver of counsel allegedly was not knowing

and voluntary, and (5) the court allegedly erred in describing the desirability of drug treatment and mental health treatment available in prison upon rendering its sentence, and (6) the order of restitution contained a mathematical error. The government filed a response on March 29, 2013 opposing the motion. For the reasons discussed below, Pacheco's § 2255 motion shall be denied in its entirety.

## STANDARD OF LAW

A defendant seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006) (citing Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004)). When raising claims alleging errors of constitutional magnitude, a defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999).

## III. DISCUSSION

I. Prosecutorial Misconduct Allegations Lack Merit

Pacheco alleges that the prosecution engaged in misconduct by (1) impeding the efforts of his court appointed investigator, (2) withholding allegedly exculpatory evidence, and (3) failing to correct the false testimony of one of the victim tellers. Each of these claims lack merit.

A.    <u>Court Appointed Investigators</u>

Pacheco alleges that the prosecution should have provided the home phone numbers and addresses of all potential witnesses and that its failure to provide information about the witnesses resulted in his investigator interviewing only nine of potentially eighty plus witnesses. In support of this contention, Pacheco has submitted as an exhibit a copy of the investigators' report. (Doc. 108, Ex. A). In that report, investigator Julianne Cuneo reports that the Assistant United States Attorney assigned to the case provided her with the addresses and phone numbers of all lay witnesses on August 11, 2009. <u>Id.</u> at 2. There was some negotiation between herself and the federal prosecutor as to discovery of the victim tellers' information. According to Cuneo's investigative report, on August 7, 2009, the federal prosecutor told her she was to contact the tellers at work unless it was "necessary" to contact them elsewhere. <u>Id.</u> Several days later on August 10, 2009, she was advised that the federal prosecutor and standby counsel had worked out an arrangement whereby she was to try contacting several bank employees at their employment offices to see what happened, and that if this attempt failed, she would be given their "names and addresses." <u>Id.</u> Cuneo attempted to talk to the victim tellers by telephone but the bank employees were not allowed to talk to her and she was advised to go through "Corporate." <u>Id.</u>

On August 11 and again on August 13, 2009, Cueno left e-mails for the federal prosecutor advising him that she had not been able to speak with any of the bank employees and requesting their home phone numbers and addresses. <u>Id.</u> at 3. On August 14, 2009, the government, via a paralegal, provided Cueno with home telephone numbers, but not addresses, for all the bank employee witnesses. <u>Id.</u> The government required

Cueno to come to their offices to pick up the discovery, which Pacheco alleges squandered his investigative monies. Cueno had located some addresses based on her own investigative work, but in the interests of staying within the court's budget, she contacted witnesses by phone. Id. Of the nine witnesses she interviewed, two were victims, and she spoke with a third victim who arranged to be interviewed at a later time but then was unavailable. Id. at 4, 6, 8-9. Pacheco argues that Cueno could not interview more witnesses because she exhausted her budget.

While Pacheco complains that the federal prosecutor interfered with Cueno's investigation, it is undisputed that well in advance of trial, the government provided the addresses and phone numbers of all witnesses who were not bank employees, and further provided her with the work telephone numbers for each of the victim tellers at the beginning of August, 2009. Id. at 1-2. Furthermore, the government provided Cueno with the personal telephone numbers of bank employees on August 14, 2009, one month prior to the trial. Id. at 3. Cueno complains that before she received the home telephone numbers of bank employees, she sent two e-mails to the prosecutor, spoke with standby counsel, the prosecutor, and the government's paralegal several times over the telephone over a one week period to work out discovery production. It is difficult to imagine that sending a few e-mail and engaging in several conversations served to exhaust much of her $1,600 budget. Likewise, it seems unlikely that Cueno's trip to the U.S. Attorney's Office to pick up discovery was very costly.

Pacheco's other complaint, with regard to his claim that the government compromised his investigation, is the government failed to provide home addresses of bank employees. As the government aptly argues in its response brief, the defendant has cited

to no rule or case law that requires the government to provide a bank robber with the home addresses of his victims. The Federal Rules of Criminal Procedure do not require the government to reveal any information about its witnesses to a defendant. <u>See</u> Fed. R. Crim. P. 16(a)(2) ("[n]or does this rule authorize the discovery or inspection of statements made by prospective government witnesses." Exceptions exist, of course, where the information is exculpatory under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), or is a statement of the witness on the subject matter of their testimony under the Jencks Act, 18 U.S.C. § 3500, and even then, the statement need not be disclosed prior to the witnesses' testimony at trial. Because the government was under no requirement to provide Pacheco the home addresses of the victim tellers, Pacheco has failed to show any prosecutorial misconduct entitling him to relief under § 2255, and certainly no misconduct having a "substantial and injurious effect or influence on the proceedings." <u>Brecht</u>, 507 U.S. at 637.

In his reply brief, Pacheco argues that he was entitled to investigate all witnesses who might have information concerning his guilt or innocence. Pacheco contends that <u>Towns v. Smith</u>, 395 F.3d 251, 258 (6th Cir. 2005) supports this proposition. It does not. In that habeas case, the Court of Appeals for the Sixth Circuit affirmed the district court's order granting habeas relief where the defense attorney failed to interview the driver of the get-away vehicle of the robbery/murder who also possessed the gun used the shoot the victim, where that witness consistently maintained to the police and others that the defendant was not involved in the crime. <u>Id.</u> at 260. Obviously, the facts of that case which involved a witness of known exculpatory importance to the defense, is not analogous to the situation presented here. It is undisputed that the government provided the names and telephone numbers of all eighty-four witnesses; the court provided Pacheco with a personal

investigator and paid that investigator $1,600 to investigate his case; the court appointed and paid for standby counsel - all while Pacheco was proceeding <u>pro</u> <u>se</u>. Whatever quibbles Pacheco may have about his pretrial preparations, he simply has not shown that the government in any way impeded him in that process.

In fact, on appeal, the Sixth Circuit rejected Pacheco's claim that he was entitled to further investigative fees, finding that "Pacheco was able to – and did – mount a vigorous defense absent the authorization of additional investigative services." 466 Fed. App'x at 522 The Sixth Circuit explained "[t]here is simply no indication that any of the additional twenty witnesses his investigator wished to interview would have buttressed his defense, particularly because the jury heard the most probative testimony, the testimony of the tellers themselves." <u>Id.</u> Where the Sixth Circuit has already ruled that additional investigation was unnecessary for Pacheco to mount a vigorous defense, he simply cannot show that the government in any way impeded that investigation.

B. <u>Allegedly Exculpatory Evidence</u>

A few days prior to trial, Pacheco's standby counsel subpoenaed records of the Livonia Police Department in relation to the bank he robbed in that city. Those police records included a report from a witness, Robert Ybarra, who stated that the suspect in the surveillance video looked like his former business partner. (Doc. 108, Ex. B). Pacheco claims the prosecutor should have given this information to him sooner so that his investigator could have pursued a lead that someone else had committed the crime. The government convincingly responds that Pacheco's argument is meritless because, in fact, he did receive the police report prior to trial which defeats any <u>Brady</u> violation. <u>See</u> <u>United States v. Blood</u>, 435 F.3d 612, 627 (6th Cir. 2006). Moreover, Pacheco cannot show that

the information was "material either to guilt or to punishment." <u>United States v. Hanna</u>, 661 F.3d 271, 296 (6th Cir. 2011) (quoting <u>Brady</u>, 373 U.S. at 87). In order to be "material," there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Id.</u> No such probability exists here where the evidence of Pacheco's guilt was overwhelming. The victim tellers all identified Pacheco in surveillance photos and videos of the bank robbery and identified him in court, his post-arrest confession was introduced, and Pacheco even admitted to robbing the banks at trial. Under these circumstances, there is simply no possibility that one bank customer's statement that defendant looked like someone else he knew would have changed the outcome of the case.

     C.    <u>Alleged False Testimony</u>

Pacheco also argues that the prosecutor engaged in misconduct by allowing perjured testimony to be presented. Specifically, William Hoffman of Chase Bank testified that his bank's policies do not require him to give up money demanded in any situation if he does not feel threatened or feels there is no theft. Pacheco argues this is untrue because other victim tellers testified that their banks had a policy of handing over cash when presented with a demand to do so. The government responds that Pacheco has not shown that the statement was false. It is possible that Chase bank did not have such a policy in all situations, or that Hoffman misunderstood the policy. Pacheco's relief was to point out any inconsistencies in the testimony at trial, which in fact, he did in his closing argument. (Doc. 88 at 49-50). In short, Pacheco has not shown that Hoffman lied or that the government suborned perjury.

II.    Appellate Counsel Was Not Ineffective

Pacheco also argues that his appellate counsel was ineffective because he failed to appeal (1) the jury instruction regarding the meaning of intimidation in the context of a bank robbery, (2) the court's consideration in determining his sentence of a conviction obtained following his guilty plea when he was not represented by counsel, two other misdemeanor convictions for domestic battery which Pacheco contends should have constituted only one crime for purposes of establishing his criminal history, and a conviction for trespassing which he alleges should not have been considered at all in determining his criminal history; and (3) the restitution amount.

The familiar two-prong test of Strickland v. Washington, 466 U.S. 668 (1984) governs the analysis of Pacheco's ineffective assistance of appellate counsel claim. The first prong requires Pocheco to show that his appellate counsel's representation "fell below an objective standard of reasonableness." 466 U.S. at 688. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct 'might be considered sound trial strategy.'" Id. at 689 (citation omitted).

The second prong requires Pacheco to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability sufficient to undermine confidence in the outcome." Id. at 694. "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." Valentine v. United States, 488 F.3d 325, 338 (6th Cir. 2007) (citation

omitted).   When analyzing a claim of ineffective assistance of counsel, the court "must indulge the strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (citation omitted).   Surmounting this "high bar is never an easy task," and a court must apply this standard "with scrupulous care." Id. at 1408.

A.     Jury Instruction Claim

Pacheco complains that his appellate counsel erred by not appealing a portion of the jury instructions given as to "intimidation" which was taken verbatim from United States v. Gilmore, 282 F.3d 398, 402 (6th Cir. 2002).   The instruction stated, "[t]he display of a weapon, a threat to use a weapon, or even a verbal or nonverbal hint of a weapon is not necessary to establish intimidation for the offense of bank robbery."   (Doc. 88 at 73-74, Trial Transcript).   In Gilmore, as in the present case, the defendant did not use a weapon in bank robberies but used only demand notes.   The Sixth Circuit stated that "[d]emands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee[s] may result." Id.   In this case, the Sixth Circuit affirmed his conviction ruling that "[a] demand note itself, being a tool of the trade of bank robbers, is a form of intimidation." United States v. Pacheco, 466 Fed. App'x 517, 523 (6th Cir. 2012) (quoting United States v. Smith, 1 F.3d 1243, 1993 WL 303359, at *1 (6th Cir. 1993) (table) (per curium)).   The court's jury instruction was a correct statement of the law taken from a published decision by the Sixth Circuit; thus, Pacheco cannot show that raising the issue on appeal would have "changed the result of the appeal." Valentine, 488 F.3d at 338.

B.    <u>Prior Convictions Considered in Calculating Criminal History</u>

At sentencing, Pacheco objected to the court's consideration, in determining his criminal history score, of an October 20, 1993 conviction for theft by bringing stolen property into the state, obstruction of justice, and aggravated assault of a police officer, arguing that his guilty plea was unconstitutional because he lacked counsel and did not knowingly waive his right to counsel.  This court did not resolve Pacheco's claim, noting that even if the court did not consider the conviction and did not add the five points for it, Pacheco's criminal history computation would remain 18.  Pacheco now argues that even though admitting his criminal history score would not be reduced, the Bureau of Prisons is using that conviction in determining his custody level.  Pacheco also argues this court erred in awarding two criminal history points for each of his June 6, 2000 convictions for domestic battery, arguing that the two convictions were really only one crime, thus, resulting in an unfair double counting.

Pacheco's argument lacks merit as his appellate counsel did, in fact, raise the issue on appeal.  In its opinion, the Sixth Circuit observed Pacheco "further claims that his sentence was procedurally unreasonable because the district court failed to consider his argument that his criminal history was overrepresented."  466 Fed. App'x at 526-27.  The Sixth Circuit specifically considered Pacheco's claim that certain past convictions should not be counted or had been assigned too many points, and found that this court considered those arguments and concluded a downward departure on those grounds was inappropriate.  <u>Id.</u> The Sixth Circuit affirmed this court's sentence and rejected his overrepresentation of his criminal history claim.  <u>Id.</u>  Having clearly raised the issue on appeal, Pacheco's claim that his appellate counsel was ineffective for not raising those

claims is wholly without merit. Moreover, in light of the fact that Pacheco's guideline range would not have changed, even if successful, the result of the appeal would not have been different. See United States v. Vonner, 516 F.3d 382, 389 (6th Cir. 2008) (presumption of reasonableness to sentence within properly calculated guideline range). Pacheco also claims this court improperly double counted his two convictions on June 6, 2000 for domestic battery and for violating a no contact order. Pacheco alleges that the convictions should only have counted as one conviction resulting in two criminal history points rather than the four that were awarded. At sentencing, the government and the probation officer recommended that the two convictions be treated as separate crimes because they occurred on separate dates. Pacheco was charged with a domestic battery that resulted from an occurrence on April 22, 2000, and was later charged with violating a condition of pretrial release for violating a no contact order issued against the victim in the original domestic battery offense on May 12, 2000.

According to Sentencing Guideline Section 4A1.2(a)(2), "[p]rior sentences *always* are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense." U.S.S.G. § 4A1.2(a)(2) (emphasis added). Moreover at the sentencing hearing, this court explained its reasoning to treat the two crimes as separate offenses, "[o]nce you got an order from the court to have no contact with the complaining witness in that case, you had to respect that order whether you committed that – committed the original domestic battery offense or not." (Doc. 89 at 25). Because there is no merit to Pacheco's double counting claim, his appellate counsel cannot be faulted for failing to raise the issue on appeal.

Finally, this court considers Pacheco's argument that his appellate counsel erred by failing to appeal this court's calculation of two criminal history points for his 2001 conviction for trespassing. Pacheco argues that his trespassing conviction should not have been considered at all, or in the alternative, should not have amounted to more than one criminal history point.[1] As to his first point, the Sentencing Guidelines are clear. Although misdemeanor offenses are not ordinarily considered in computing a defendant's criminal history, such crimes are considered when the sentence imposed "was a term of probation of more than one year or a term of imprisonment of at least thirty days." U.S.S.G. § 4A1.2(c)(1). The Sentencing Guidelines clearly provide that two points are awarded "for each prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1(b).

As to his second argument, that no more than one point should have been awarded, Pacheco is also mistaken. Pacheco relies on two cases in support of his claim, both are inapposite. In <u>United States v. Edwards</u>, 272 F.3d 812, 817 (6th Cir. 2001), the defendant was given one point for his prior convictions for reckless driving and for his administrative suspension of license where he served only two days in prison but was subject to one year probation for the offenses which subjected him to a total of one point under Sentencing Guideline §4.A1.1(c). Similarly, his reliance on <u>United States v. Rollins</u>, 378 F.3d 535, 538 (6th Cir. 2004) is misplaced for the same reason that defendant there was not sentenced to any prison time for his misdemeanor crime but merely to probation and thus, was subject to one point only under § 4A1.1(c). By contrast, Pacheco was sentenced to 60 days imprisonment, thus two points were properly added in calculating Pacheco's criminal history

---

[1]Pacheco tried raising this argument in the supplemental brief he tried filing <u>pro se</u> in his appeal to the Sixth Circuit, but the appellate court rejected his papers on the grounds he was represented by counsel.

for the misdemeanor trespassing under § 4A1.1(b).  See United States v. Shepard, 40 Fed. App'x 142, 144-45 (6th Cir. 2002) (affirming sentence where defendant argued the court erred in awarding two points for each of his prior contempt offenses under U.S.S.G. § 4A1.1(b) and 4A1.2(c)(1)).

C.    Restitution Amount

Pacheco also argues that his appellate counsel erred by not challenging the restitution amount on appeal.  Specifically, he claims an error of $1,000 in excess of what should be owing because Probation attributed a $4,501 loss for Charter One Bank when the actual loss was allegedly $3,501.  The government responds that Pacheco failed to preserve this issue at sentencing but a careful review of the sentencing hearing suggests that Pacheco did in fact challenge the government's calculations at sentencing.  (Doc. 89 at 33, 39-40).  Even considering the issue to have been properly preserved with the district court, however, Pacheco cannot show that if the Court of Appeals had considered the issue, that it would have changed the outcome of the appeal.

At the sentencing hearing, Pacheco stated that the amount owing was $15,732.06 as set forth in the plea agreement.  Id. at 33.  At the hearing, the government, on the other hand, stated that the amount stated in the plea agreement was based on an error by the prior Assistant United States Attorney assigned to the case, and that the amount owing, based on totals missing from the tellers, was actually $1,000 more for a total of $16,732.06. Id. at 39.  Probation Officer William Hampstead testified that he had done the math and the amount was accurately set forth in the pre-sentence report.  Id.  In any event, the alleged mathematical disparity of $1,000 is irrelevant, as the government stated at sentencing whatever the exact amount that was missing from the tellers, "the loss to the bank was

greater than the money taken because they shut down operations, [and] offered counseling." Id. at 40. Certainly, these additional costs to the five banks would have exceeded the $1,000 in dispute. Accordingly, Pacheco cannot show that his appellate counsel was ineffective for failing to raise the issue, nor has he shown any constitutional error in the restitution awarded.

III.    Standby Counsel Did Not Violate Pacheco's Due Process Rights

Pacheco argues that his standby counsel violated his due process rights by failing to subpoena defense witnesses, failing to provide key evidence, and failing to adequately help him to prepare for trial. The government correctly counters that Pacheco cannot complain that his standby counsel was ineffective when he chose to represent himself pro se and has no constitutional right to standby counsel in such an instance. See United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998); United States v. Mikolajczyk, 137 F.3d 237, 246 (5th Cir. 1998). Not only is there is no constitutional right to the appointment of standby counsel, neither is a court required to permit "hybrid" representation by a pro se defendant and standby counsel together. United States v. Cromer, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (citations omitted).

"By electing to exercise his constitutional right to present his own defense, a defendant necessarily waives his constitutional right to be represented by counsel." Cromer, 389 F.3d at 680 (citing United States v. Mosley, 810 F.2d 93, 97 (6th Cir.1987) (" 'The right to defend pro se and the right to counsel have been aptly described as "two faces of the same coin," in that waiver of one right constitutes a correlative assertion of the other.' " (quoting United States v. Conder, 423 F.2d 904, 908 (6th Cir.1970))). "Logically, a defendant cannot waive his right to counsel and then complain about the quality of his own

defense." <u>Wilson v. Parker</u>, 515 F.3d 682, 696 (6th Cir. 2008), <u>cert. denied sub nom</u>, <u>Wilson v. Simpson</u>, 558 U.S. 846 (2009) (citations omitted). "To the extent [standby counsel] failed to act during trial, [the defendant] merely suffered the consequences of his decision to proceed <u>pro</u> <u>se</u>." <u>Wilson</u>, 515 F.3d at 697. The Sixth Circuit has recognized that defendants are entitled to represent themselves despite the fact that there is "an inherent inability of the vast majority of defendants to adequately represent themselves in a meaningful manner." <u>United States v. Smith</u>, 907 F.2d 42, 45 (6th Cir. 1990).

In his reply brief, Pacheco argues that this court permitted a "hybrid" representation and thus, his decision to waive counsel was not voluntary. In support of this argument, Pacheco relies on an order of this court denying without prejudice his request that the court appoint an investigator on the grounds that his standby counsel could conduct limited investigation. (Doc. 47). It is significant to note, however, that shortly thereafter, on March 13, 2009, this court granted Pacheco's motion to obtain an investigator and to adjourn the trial date. (Doc. 54). There is simply no basis for the claim that this court allowed "hybrid" representation.

Moreover, the crux of Pacheco's angst with his standby counsel is that he failed to conduct an adequate investigation. This is essentially the same argument that he made on appeal where he argued that this court erred in not awarding him investigative fees over and beyond the $1,600 already awarded. On appeal, Sixth Circuit ruled that any further investigation would have unnecessary because Pacheco was able to mount a vigorous defense based on the investigation performed and "because the jury heard the most probative testimony, the testimony of the tellers themselves." 466 Fed. App'x at 522. In light of the overwhelming evidence of Pacheco's guilt, including his own confession, trial

testimony, and the testimony of each of the teller victims who identified him on surveillance photos and videos and in court, Pacheco cannot point to any witnesses or evidence that his standby counsel should have uncovered that would have been beneficial to his case. Thus, he cannot show that standby counsel violated his constitutional rights.

IV.    Pacheco's Waiver of Counsel Was Knowing and Voluntary

Pacheco now claims his waiver of counsel was not knowing and voluntary.  In analyzing this claim, the court reviews briefly the pretrial proceedings which led up to his motion to represent himself.  On October 31, 2007, the day Pacheco's complaint was sworn, the court entered an order appointing a Federal Defender to represent him.  On July 31, 2008, the court granted that attorney's oral motion to withdraw.  On August 4, 2008, the court appointed new counsel for Pacheco, not from the Federal Defender's Office, but a private panel attorney.  Less than three weeks later, on August 21, 2008, Pacheco moved to proceed pro se (Doc. 25 at 2) arguing that his attorney had not contacted him and he had no confidence in the Federal Defender's Office.  Prior to the court's ruling on that motion, Pacheco filed several motions which the court struck on the grounds that he was represented by counsel.  (Doc. 28).  On October 14, 2008, Pacheco filed a second motion to proceed pro se, complaining that his new counsel had not visited him in prison until September 8, 2008, approximately one month after his appointment, and seeking to proceed to trial within thirty days.  (Doc. 33).  The court held a hearing on that motion on December 2, 2008.

The law is well established that a criminal defendant has a constitutionally protected right to present his own defense in addition to a constitutionally protected right to be represented by counsel.  Faretta v. California, 422 U.S. 806, 833-34 (1975).  In United

States v. Cromer, 389 F.3d 662 (6th Cir. 2004), the Sixth Circuit summarized the procedures for determining if a defendant has knowingly and voluntarily waived his right to counsel. In Cromer, the Sixth Circuit reiterated its holding in United States v. McDowell, 814 F.3d 245, 247 (6th Cir. 1987) that the district court should follow the lengthy series of questions from 1 *Bench Book for United States District Judges* 1.02-2 to -5 (3d Ed.1986) "to ensure that a defendant's waiver of counsel is knowing and intelligent." Cromer, 389 F.3d at 680. On December 2, 2008, after meeting with counsel and Pacheco in chambers and discussing Pacheco's motion to proceed pro se, this court conducted a Faretta hearing to determine if Pacheco had made a knowing and voluntary relinquishment of his right to counsel. At that hearing, this court determined that Pacheco had some training in the law and had worked as a paralegal. (Doc. 83 at 5). The court cautioned Pacheco that he was at a "distinct disadvantage" in representing himself pro se, even with stand by counsel and urged him not to do so. Id. at 6, 13.

The court urged Pacheco to meet with new counsel, to be appointed by the court, before deciding to proceed pro se so that he could make a more intelligent decision as to whether or not he truly wanted to represent himself, but Pacheco rejected that option and insisted on going forward with the Faretta colloquy at that time, stating his satisfaction with having standby counsel. Id. at 8. The court advised Pacheco of the seriousness of the five bank robbery counts against him and warned him of the twenty-year penalty he faced as to each count and the possibility that he would receive a fine of as much as $250,000. (Doc. 83 at 9). The court pointed out that Pacheco lacked experience in criminal law, sentencing procedures, court procedures, the Federal Rules of Evidence, and the Federal

Rules of Criminal Procedure.  Id. at 9-13.  Despite these cautionary statements, Pacheco stated his intentions to proceed representing himself.

"A waiver of the right to counsel must be voluntary, knowing, and intelligent.  The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Howell v. Rubitschun, 2005 WL 2319012, *4 (E.D. Mich. Sept. 20, 2005) (Steeh, J.).  Pacheco now argues that his waiver of counsel was not voluntary because he expected his standby counsel to perform certain tasks, such as subpoenaing defense witnesses, identifying witnesses, collecting police reports, etc., and his standby counsel did not perform these tasks. Pacheco could have asked the court to appoint new counsel, or even new standby counsel, if he was unhappy with his standby counsel's assistance, but he never did.  In essence, Pacheco's complaint with standby counsel is his same complaint that the pretrial investigation of his case was inadequate.

The Sixth Circuit considered this argument, in the context of his claim that this court erred by not awarding additional funds for the investigation, ruling that Pacheco had failed to show that any additional investigation would have added anything to his vigorous defense given the overwhelming evidence against him, including the testimony of the teller victims, which was the most probative testimony as to the question of whether they felt intimidated.  Pacheco, 466 Fed. App'x at 522.  Given that Pacheco's sole defense to the bank robberies, which he admitted, was that the tellers did not feel intimidated, Pacheco does not have any real complaint that his standby counsel's failure to complete more pretrial discovery made his waiver of counsel involuntary, where he cannot show that any

such discovery would have been helpful to his case.  In sum, Pacheco cannot show that his waiver of counsel was involuntary, and even if he could establish that it was, he cannot show any "constitutional error had a substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637-38 (citations omitted).

V.    Defendant's Sentence Within the Guidelines Was Reasonable

Pacheco argues that his 120-month sentence was unreasonable because this court erred in considering his need for drug/mental health treatment when imposing his sentence. The government responds that the court did not sentence him based on his need for drug/mental health treatment and in any event, nonconstitutional arguments are not cognizable under § 2255.  At the sentencing hearing, this court admonished Pacheco that "[o]ne good thing about this situation for you other than the fact that you didn't commit suicide . . . was that you will be in a federal facility where there are more services available than where you have been before, and if you want to avail yourself of the kind of rehabilitative services that I think are going to be needed for you to avoid that trouble, you'll have a chance to do that."  (Doc. 89 at 37).  Although the record suggests that the availability of mental health treatment was a factor, the court also explained "I do have to order a sentence that comports with the – with the damage that's been done, with the seriousness of the violation which would give you plenty of time to work on that, on those problems."  Id. at 38.  This court entered a sentence at the very low end of the sentencing guidelines.

Pacheco argues that the Supreme Court's recent opinion in Tapia v. United States, 131 S. Ct. 2382 (2012) requires that his petition be granted.  In Tapia, the Supreme Court held that the district court erred when it imposed a 51-month sentence, at the highest end

of the sentencing guidelines, so that the defendant would qualify for a 500-month drug treatment program. Id. at 2392-93. In this case, by contrast, the court sentenced Pacheco to the very low end of the sentencing guidelines, and although the court noted the desirability of defendant receiving drug and mental health treatment while incarcerated, the sentence was not based on qualifying the defendant for any particular program or federal facility. It is also significant that Tapia involved a direct appeal, in which the Supreme Court considered whether the sentence imposed violated the Sentencing Reform Act, 18 U.S.C. § 3582(a), and found that the statute prohibits courts from imposing or lengthening a prison term to promote a defendant's rehabilitation. Id. By contrast, this case involves a federal habeas claim under § 2255, which requires a constitutional violation to be cognizable. Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996). Because Tapia is factually distinguishable, Pacheco's claim that the Supreme Court's decision in Tapia must apply retroactively based on the Court's decision in Davis v. United States, 131 S. Ct. 2419 (2011) is equally misplaced. In sum, Pacheco's 120-month sentence, at the very low end of the Sentencing Guidelines, was reasonable.

VI.    Restitution Order Was Constitutional

Finally, the court considers Pacheco's argument that the restitution order was unconstitutional. He claims that the restitution order violates the Mandatory Victims Restitution Act because his probation officer failed to follow the proper procedures for calculating the amount owing, thus, resulting in an overpayment of $1,000. Relief from alleged statutory violations is not cognizable under habeas, only errors of constitutional magnitude are. Grant, 72 F.3d at 506. Pacheco argues that the restitution is unconstitutional because the loss amounts were not submitted to the jury. Under the

-24-

Supreme Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000), the jury need not decide the restitution amounts here as they were not elements of the offense and were not used to increase his statutory sentence. Pacheco's reliance on <u>Southern Union Co. v. United States</u>, 132 S. Ct. 2344 (2012) is unavailing. In that case, the Supreme Court extended the holding in <u>Apprendi</u> to apply to criminal fines in a case involving a corporate defendant convicted on environmental violations. 132 S. Ct. at 2357.

Pacheco's reliance on <u>United States v. Booker</u>, 534 U.S. 220 (2005) is also misplaced. In that case, the defendant was convicted on drug charges and the jury found the defendant to have possessed at least 50 grams of crack cocaine. At sentencing, the district judge found that the defendant was actually in possession of an additional 566 grams of cocaine based on a preponderance of the evidence and sentenced him to ten years longer than the range provided for under the Sentencing Guidelines based on the jury verdict. <u>Id.</u> at 226. Unlike <u>Booker</u>, this case does not involve any improper fact finding on the part of the trial judge and does not involve a sentence exceeding the maximum authorized by the jury verdict. As stated earlier in this order, any alleged mathematical error of $1,000 is irrelevant, in any event, because, as the government stated at sentencing, whatever the exact amount that was missing from the tellers, "the loss to the bank was greater than the money taken because they shut down operations, [and] offered counseling." (Doc. 89 at 40). Certainly, these additional costs to the five banks would have exceeded the $1,000 in dispute.

Pacheco argues that he can only be ordered to pay restitution on the loss related to the offense of conviction. In support of this argument, he relies on two cases which held that the district court erred when it ordered the defendant to pay restitution on counts other

than those for which the defendant was convicted. <u>Hughey v. United States</u>, 495 U.S. 411, 416 (1979); <u>United States v. Guardino</u>, 972 F.2d 682, 687-88 (6th Cir. 1990). In this case, Pacheco was ordered to pay restitution for the five bank robbery counts for which he was convicted. (Doc. 71). The holdings of <u>Hughey</u> and <u>Guradino</u> do not apply. In sum, Pacheco has not shown that the restitution amount was unconstitutional.

VII.    <u>Denial of Certificate of Appealability</u>

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2225 Proceedings, which was amended as of December 1, 2009, requires that a district court issue or deny a certificate of appealability when it enters a final order. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); <u>In re Certificates of Appealability</u>, 106 F.3d 1306, 1307 (6th Cir. 1997). If a § 2255 motion is denied on procedural grounds without reaching the underlying merits, a certificate of appealability should issue if the movant shows that jurists of reason would find it debatable whether the motion states a valid claim and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. <u>See</u> <u>Slack</u> v. <u>McDaniel</u>, 529 U.S. 473, 478 (2000). Defendant has not demonstrated that jurists of reason would find it debatable that his claims are valid, or that this court's procedural ruling is correct. The court will not issue a certificate of appealability in this case.

## IV. CONCLUSION

Accordingly, defendant's motion to vacate, set aside or correct sentence [Doc. 108] is DENIED.

Defendant's motion  to vacate, set aside or correct sentence under 28 U.S.C. § 2255  is DISMISSED WITH PREJUDICE.  A certificate of appealability shall not issue.

SO ORDERED.

Dated:  May 13, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 13, 2013, by electronic and/or ordinary mail and also on
Joseph Costa Pacheco III, #42093-039, FCI Terre Haute,
Federal Correctional Institution, P. O. Box 33,
Terre Haute, IN  47808.

s/Barbara Radke
Deputy Clerk

---